The United States Court of Appeals for the Ninth Circuit is now in session. Good morning and welcome all to the James Browning U.S. Courthouse here in San Francisco. This is the time set for the case of Brandon Briskin v. Shopify, Inc. Before we proceed, I just want to make sure our colleagues on video are present and can hear me. Judge Wardlaw? I can hear you very well. Okay. Judge Desai? Yes, I can hear you. Thank you. All right. Thank you. If the parties are ready, you may proceed. Good morning, Your Honors, and may it please the Court. Nick Sansone on behalf of Brandon Briskin. With the Court's permission, I'll reserve five minutes for rebuttal. We agree with Shopify that personal jurisdiction turns on the activities of the defendant and not on the unilateral actions of third parties. So let's look at what Shopify is alleged to have done in this case. While connected electronically to the computer of an online shopper who Shopify knew to be located in California, Shopify voluntarily and intentionally sent tracking software into California onto the shopper's computer. Precisely as Shopify intended and desired, this tracking software remained on the computer indefinitely thereafter, sending a continuous stream of information about the California shopper's online activities out of California and directly to Shopify on an ongoing basis. So I understand the facts. Is you asserting that it's collecting more information than was necessary for the particular transaction? That's absolutely correct. It may be helpful to disaggregate the two streams of revenue, the two business models that Shopify is alleged to have engaged in. The first business model is that Shopify contracts with online merchants to provide online payment processing services. It makes money by contracting with merchants to do that. While it is connected to an online shopper in order to fulfill its obligation with the merchant, Shopify then uses that direct access to the shopper's computer to engage in its second business model. And this is separate from its relationship with the merchant. Shopify uses its connection to the online shopper for its own purposes, to install tracking software onto the user's device, and then use that software to continuously pull information out of California so that it itself can build an individual consumer profile of that specific shopper, again, who it knows to be located in California, and then sells that profile on to third parties. But let's say stated differently that if your client had been visiting relatives in New York, and wouldn't his alleged injury have happened in that state if he bought the apparel from IMB, MFG, or whoever online when visiting, when he was visiting? Wouldn't the extraction have happened there? The extraction would have happened there. In New York. So then why isn't it following Mr. Briskin? Because... I guess I'm just, I'm having a hard time here. Because once the online connection is opened up, in other words, if Mr. Briskin consummates a sale, moves to make a purchase in California, and then there's an online connection that's opened up between his computer in California and Shopify, it is then Shopify's decision what to do at that point. It could simply process the transaction and move on. That isn't what Shopify chooses to do. But what if he was in New York, and he made the transaction? Wouldn't this, and he stayed there for a week, and then Shopify, the same extraction happened, then wouldn't New York be the place? In that instance, yes, New York would be the proper place. So it's, yeah, it just seems like it's following Mr. Briskin. So certainly the presence of the plaintiff in the forum state when the alleged tort occurs is jurisdictionally relevant. It certainly is not the fact upon which jurisdiction turns. As the Supreme Court has made clear, the plaintiff's affiliations with the forum state are not what's relevant. But when the plaintiff is present in the forum state, and an online connection is formed between the defendant and the forum state... How is that express aiming, I suppose, at California when Shopify would do this wherever? It seems like in whatever state the plaintiff was in. Just as the defendant in Keaton versus Hustler magazine sent its magazines into every state, knowingly did so, profited from doing that. Shopify has constructed a business model where it pulls consumer data out of every state based on the transactions that occur there. Do we need to know... Is it your position... Go ahead, Judge Asai. Is it your position that online businesses then would be subject to jurisdiction in every state? It depends on the nature of the claim, and it depends on the nature of the business. So this court's decision in Erbil Brands placed two important qualifications on the express aiming requirement. The contact with the forum state has to be part of the defendant's regular course of business, and the defendant has to exercise some level of control over its contacts with the forum state. In addition, the personal jurisdiction inquiry, specific personal jurisdiction, requires that the claims arise out of or relate to that contact. But I guess the rule that you're proposing, I'm seeing what Judge Asai is saying, that Shopify could be subject to personal jurisdiction in every state. Then Shopify is probably going to get up, and then they're going to say, you know, well, there's not personal jurisdiction here. And then I'm going to say, well, where is it? And then they're going to say, well, I don't know what they're going to say. But so if it's everywhere and nowhere, I find it hard to believe that that would be the rule the Supreme Court would come up with. Can I focus you on the second business model? Because I understand the second business model to include brick and mortar stores in California that sell the service that includes compiling customer profiles. Do I understand that correctly? So when I referred to the second business model, I was thinking of the data extraction activities that occur entirely online. I ask you whether it's the first or the second. Do I understand that's part of your allegation? There's brick and mortar stores in California, not online stores, brick and mortar stores located in California. Shopify does have physical presence. That's just a yes or a no? Yes. All right. Because I really need to, I'm not trying to give you a hard time, but I need to understand, and you're speaking in a little bit general terms, so that means the customers in that case are retailers like REI, right? Correct. That can go into that store and buy the service that includes this payment processing service, but also what I'm going to call data stitching to compile customer profiles. And they sell that service to, in my hypo, to REI. We can tell you more about your customers, REI. Is that right? That is right, but it's important to keep in mind that the company that is profiting off of the sort of data extraction, consumer compilation, Shopify sells that service to businesses, but it is, yeah. Okay, so the answer is yes. And your other point is that Shopify is then selling that data or that customer profile, which is, that's a fair point. But if I could just ask one other question, you said while that connection happens, and I don't know how literally you were speaking, so the cookie gets implanted, I think, well, that's what I want to know. Is it your allegation that the cookie gets implanted only when a customer makes a purchase? No, it's as soon as the customer clicks a link on the merchant's website. When the consumer clicks that link, the consumer is directed away from the merchant's website and is connected directly to Shopify's platform. Okay, so now we don't care where the consumer is in America or in the world. Is that right? They're shopping to go buy, my hypothetical is a backpack at REI, and that customer could be with her iPad anywhere, right? That customer could be anywhere. Okay, and so to answer my question, then I can get out of your way. What is your contention about when the cookie gets implanted? So it is when the customer clicks the link to navigate away from the merchant's page and gets connected to Shopify's servers. At that point... Well, wait a minute, does the customer... I'm sorry, forgive me for interrupting, but is the customer who's just shopping on the REI website trying to choose a backpack, there's no cookie implanted yet until the customer clicks to purchase a backpack? Until the customer clicks the link that navigates to the purchase page. In other words, the page that comes up is a form... So to initiate a purchase. To initiate a purchase. All right, thank you. Whether or not it's consummated in the end. All right, okay, thank you. So... Can I ask you, you mentioned Keaton, the Supreme Court case, where they referred to continuously and deliberately exploited the form state, that's the term, that's where personal jurisdiction seems to begin. But I guess I want to know what you think it means for a defendant to have continuously and deliberately exploited a given market. When a defendant makes money off of individuals in the forum state, whether that is by selling them products, whether that is by taking information from them, or taking valuable intangible property from them, and then uses that property, that intangible property, to then turn a profit, selling it on to other people, other businesses, we think that is the deliberate and systematic exploitation of an in-state market. Because, again, Shopify is fully aware that it is pulling information out of thousands, if not millions, of California transactions day after day on an ongoing basis. And it knows that what it's doing is valuable. In other words, if we had a hacker who was pulling out seven cents from Californians' bank accounts, that is intangible information, it translates to money in the real world. But that is the defendant going into California and taking something out. And the court need not plow new ground in order to hold that. We think the facts in this case are very analogous to the ones in this court's college source decision, which is cited at page— Counsel, can I ask, you said that there's two business models for Shopify. The first one, it just relates to the merchant, and the second is for their own business. Under your theory, under the first business model, is that enough for a personal jurisdiction? That is a tougher case. And, again, it would depend on what the nature of the claim is, because the claim would have to arise out of that transaction. But I think there would be a good case for personal jurisdiction in that instance, because even though it is the consumer who initiates the purchase and the merchant who holds itself out to complete the purchase, it is Shopify who has contracted to perform the payment processing service wherever it occurs. And then what makes the second model so much a stronger case for personal jurisdiction then? Because the second business model only comes into play after that online connection between consumer and Shopify is already established. So for the second business model, it doesn't matter whether we conceive of the consumer as having opened up that online link, or whether we conceive of Shopify as having opened up that online link. The online link is already there. Shopify then says, I have access to a California consumer's computer. For your jurisdiction argument on what you've been calling the second model, would it make any difference if your allegation were that what were being installed on your client's computer was malware, was a virus? Would that make any difference to your personal jurisdiction argument, or would it be the same? I think it would be the same, because it's Shopify's decision to install whatever software it's installing on a California device. And so whether that's malware, whether that's tracking software, Shopify is intending to send that software, whatever it is, onto a California device. It's not doing that, as I understand. I think this is part of your theory, but I'm not sure. It's not doing that just as a service to REI and the backpack. Not just to help REI understand its customer profiles better. It's marketing those profiles. Absolutely correct. But that's business model two. That's correct. But business model one... Sorry, I'm not sure. Judge Wardlaw? Yeah, I have a question, because I want to understand... We've been talking about the purposeful availment or prong. And I want to look at the injury prong, because I think the injury prong goes to what the actual tort is. And we have to kind of look at the relationship between the actions of Spotify and the claim that arises. And what I'm understanding is, the injury isn't the actual insertion of the cookie or tracking the data. It's the continuous injury of the person, the shopper's data now having been extracted, being marketed and circulated. And that's the privacy violation. That's the claim that you seem to have alleged here. And to go back to some of the hypotheticals, if it's a California resident who lives and works in California, if the extraction takes place in New Jersey, what difference does it make? The privacy harms are still occurring to him in California. So... Do I have that right? Otherwise, we're just left with general jurisdiction. But for specific jurisdiction, we have to link the two. That's correct. And in that instance, there would be a plausible argument for specific jurisdiction in California, precisely for the reasons that Your Honor articulates. But that would be a harder case, we acknowledge. And the reason for that is that it is that sort of direct insertion. For the purposes of the express aiming requirement, the insertion of the tracking software, we think, is one of the clearest instances in which Shopify is aware that it is linked up to a computer in the forum state, and it chooses to take a direct action that then gives rise to all of these harms. And that occurs in the state where the transaction occurs. So in this case, where the extraction, the implantation of the tracking software, all of the relevant conduct is alleged to have occurred while Mr. Briskin's computer was in California, we think in this case, the court need not necessarily disentangle what would happen if some of the relevant events occurred in California and some occurred elsewhere. So are all of the class members California residents? Or if not, what's the percentage are? That is not known, the residents of the class members. The class is defined as those who made a purchase while in the state of California. So you had like the first theory and the second theory, or the first type of transaction and the second. And I want to ask you about the first. So the first is, as I understand it, just processing the REI purchase of the backpack. If Shopify in the course of that got your credit card number, your address, and then was very sloppy with the storage and that information got stolen, wouldn't that be personal jurisdiction in California too? I'm not sure why you need the second model. We think the second model makes jurisdiction even clearer. But we agree with your honor that Shopify has contracted to perform a service on behalf of merchants. It performs that service. It performs it across the country. And so when torts arise out of Shopify's conduct in performing that service on behalf of consumers, as it is contracted to do, that yes, it should be understood to have expressly aimed its activities into the state where those transactions occur. Can I ask you a follow-up question about your geolocation allegation? Yes. I'm going back to, now I understand, I think you've, it's been clarifying to me to understand when you allege the cookie gets implanted. It sounds like when somebody initiates a sale, whether they consummate it or not. So that's helpful. You also allege elsewhere in the complaint that with geolocation, they know where that customer, I guess you're going to call that person a consumer, shopper, the shopper, where the shopper is. So is that true? Does Shopify know where that customer is from the get-go? At the time the cookie's inserted, your allegation is they know where that shopper is? Yes. And then your allegation is the cookie stayed in the device? Indefinitely thereafter. And that they continue with their geolocation capabilities to know where it goes? Correct. Is that right? Correct. Okay, thank you. Does it matter where the servers are? We don't believe so, no. Because what's relevant is what activity Shopify is directing into the forum state. And here, that occurs at the point of sale between the shopper and the merchant. And that's the juncture at which Shopify implants the software, collects the data, and then sets the process in motion for it to continually extract this stream of data. Sorry, go ahead. And I would like to briefly return, if I may, to this court's college source decision. Because again, I do think that that case is very relevant to the claims alleged here. College source held that the deliberate electronic extraction of valuable intangible property out of the forum state is conduct that's expressly aimed at the forum. And whereas the college source defendant knowingly pulled data from one California plaintiff, a competitor, Shopify knowingly pulls data from thousands or millions of California shoppers day in, day out, as part of its continuous, systematic, profitable business operations. So just as personal jurisdiction was proper in college source, just as that activity was properly understood to be expressly aimed into the forum state, even though it all occurred online, and it all involved the electronic transfer of data, the same is true here. The only difference is a difference in scale. How does our case in AMA multimedia fit into all of this? AMA multimedia, it's important to look at what the offense conduct alleged is in the various cases. So in AMA multimedia, the offense conduct alleged was the posting of infringing content online. And this court has held correctly, we believe, that merely posting something on the internet and taking no further action does not expressly aim that content into every forum where it's visible. The plaintiff in such cases needs to go a step further and show that the forum state audience was actually part of the defendant's intended audience. Do you agree with the differential targeting rule of AMA and of Doe versus Web Group? Not differential targeting, Your Honor. We agree that there must be some showing that the defendant- That sounds like what you just said. You can't just go out to the internet. You have to have something more. And that's what AMA said. And then what Web Group said is you have to have something different about the forum, a differential targeting. And now I hear you endorsing that. No, not necessarily a differential targeting. We agree that there must be some showing that the forum was part of the intended audience, but it's certainly possible to imagine- You think that AMA was correct on its own facts, that 20% of the market that they send out to is in the United States and that the United States still has no jurisdiction. Do you agree with that? No, we don't agree with that. I think we should overrule AMA. We would certainly be open to that. We don't think the court- Well, we've decided. It obviously has to go under your review. But I do think- We don't think the court- I do think you've said both things. So if you could slow down. This is an important question for me, at least. Yeah. What's your answer? So the answer to differential- I'll address differential targeting and then I'll address the question of overruling AMA Multimedia. The question of differential targeting, it is certainly possible to imagine, take, for example, the New York Times website, a website where content is posted online and it is intended to reach every jurisdiction. That's part of the company's model. It wants readers in all 50 states. It intends to have readers in all 50 states. There would be no differential showing there. There would be no requirement that the plaintiff show, well, but it has more readers in Massachusetts than in Rhode Island because every jurisdiction is an intended target of the post. But we do agree that everybody, for example, a grandmother with a cooking blog who just sort of posts something online, that person is not necessarily intending to reach every audience. So if somebody, if this grandmother is in Maine and you have somebody alleging a claim in Hawaii, that Hawaii plaintiff would need to show not necessarily that Hawaii was different from the other states or expressly targeted above and beyond the other states, but that that posting of that blog post was intended to reach Hawaiian readers. Why? Because it's got Hawaiian recipes or something? I mean, is that what your, the content would have to reveal that? Not necessarily the content. Cases like Maverick's photo have looked to advertising structure, Wenat looked to, or excuse me, Doe looked to questions about processing speeds. I understand. Is it your view that in that kind of situation, it's an issue of sort of there aren't minimum contacts or it's too de minimis and not an issue of differential? Exactly, exactly. And briefly on the question of overruling AMA multimedia, again, we do think that where a website derives 20% of its viewership from a forum market, it is aiming at that market. But that said, this court need not address whether AMA was right on its facts because this case involves fundamentally different offense conduct. Do you agree that you would lose under a differential targeting rule, that there isn't differential targeting here of California versus any other state or jurisdiction? There is nothing in the record to indicate that Shopify targeted California more than any other state. You would lose under a differential, if we adhere to that. If by differential, you mean that comparatively, the contacts with the forum state are greater than the contacts with other states, we don't think there's an allegation that establishes that. But even Shopify has disavowed that understanding of this court's something more requirement. But if we think AMA requires extra in the jurisdiction, more targeting in the jurisdiction, if we think that, maybe you don't think it says that, but if we think it says that, we need to overrule it on your view. This court would need to overrule that aspect of AMA multimedia, certainly, to the extent that it reads that case to establish that sort of rule that the forum state contacts must be greater than the contacts in any other jurisdiction. And the other dispositive part of AMA was that it did have interactive features also, it wasn't just a passive website. So if you're saying that Shopify has, this is not a passive website case because there's this scraping of data, then that part of AMA should be overruled as well, right? Correct. Although I will actually note that we actually agree with the Chamber of Commerce in its discussion of the distinction between a passive website and an interactive website, not necessarily being that helpful to the jurisdictional analysis. We think it's more helpful to look at what is the offense conduct alleged. And if the offense conduct alleged is posting content online, whether that website is passive, interactive, whether it has a comment feature or not, if all that the defendant is alleged to have done is post content online, we think that the sort of Mavericks Photo, AMA, Doe sort of analysis would apply. Whereas if the conduct alleged is, as here, a direct bilateral exchange of information with the forum user and using that exchange to exploit a forum market. So is this positive feature then that it's scraping data then? Would you phrase it that simply or not? I think that would be one way of sort of articulating what the offense conduct here is alleged to have been. I think your answer on my model one question was if they don't have to scrape the data, the data could be part of the transaction. If they then lose it because they're sloppy, that's also enough. It's not like you have to have scraping, right? Or some sort of extra stealing. That's true. We don't think that's required. We think the scraping would be sufficient to decide this case. I thought your allegation was that it's scraped and then marketed. Correct. Being sold. Yes. I was just asking about hypothetical. So we're just taking these in different hypos. Thank you. Did you want to reserve the balance of your time? If I may, Your Honor. Thank you. Good morning, Your Honors. Moaz Kaba on behalf of the three Shopify entities. May it please the court. No court or case has ever endorsed the expansion of personal jurisdiction that Appellant proposes here. Appellant essentially argues that because an internet service can function anywhere, the company must be subject to jurisdiction everywhere. No matter that Shopify is completely forum agnostic, has no specific focus on California, and has no direct dealings with customers like Appellant at all. Where did the torts alleged here take place? Where was the conduct that violated the laws that they allege? Where did that conduct occur? It happened, according to them, virtually. So it happened... Happened somewhere. Some place has jurisdiction. There is a place of the tort. What is the place of the tort here? Well, I think the question gets to the unique nature of the complexities around internet transactions. So the harm they certainly allege... I'm not getting an answer. What is the jurisdiction where the place of the tort occurred? I would say the jurisdiction, at the very least, is in the home states of the defendants. So in here, you have New York and you have Delaware. Contacting a device in California and putting something on the device and collecting information from the device in California and sending it out doesn't occur in California? I would say that the harm is experienced in California, but the harm... I just described conduct. So an electronic signal is sent over. Something is implanted on a device that is in California. The computer knows it's in California. It takes data in California from a device in California and ships it out of California. And the claim is that the collection and transmission of the data violates California statutes. How does that conduct not occur in California? Well, I think on the hypothetical you described, yes. What they allege is that... No, what they are alleging is that Shopify has made a decision. One of the three Shopify entities has made a decision that to service merchants, those merchants elect for payment processing services. That's not quite right, sir. In response to the panel's questions today, he's alleged more specifically, I think, that at the time a purchase is initiated, whether it's consummated or not, that with their geolocation capabilities, they know where that computer is, to follow up on Judge Collins's point, and that that's when the cookies are inserted. And I think the allegation is that's the harm because that's the invasion of privacy. I agree with that. I do think they are alleging that... The complaint's actual allegation says that at the time you navigate to the checkout page, there's a cookie inserted and the harm is then experienced in California. So understanding those allegations, because I think that's what we just spent about 25 minutes on that. Understanding that, could you answer Judge Collins's question? Yeah, I think in the hypothetical that Judge Collins is presenting, the act and the harm is occurring in wherever the consumer or the user may be. Counsel, if their allegation were that Shopify were deliberately inserting a virus or software that, say, stole the user's social security number, would your jurisdiction argument be any different in my hypothetical? I would say that if they allege that Shopify chooses affirmatively to target California consumers and take their social security numbers... Whether they chose to do it or not, that's what they did. They inserted a virus into a California... into a computer physically located in California to steal the social security number on that computer located in Sacramento. I would say in the scenario that you're describing, I think it would be a much... I think it would be a much stronger case of satisfying the Calder effect. What I'm having trouble understanding is jurisprudentially what the difference is between my hypothetical and their allegation of putting this tracking and using this tracking information in California violates California law. I'm having trouble understanding what the jurisprudential difference is between what they're alleging and what my hypothetical is. Because their allegation, as the facts of this case demonstrate, Shopify contracts with merchants. Shopify performs these services for any merchant that elects to do it in any state in the country. As Judge Callahan was just noting, if the appellant happened to be in Nevada, they would say, I suffered my harm in Nevada and you did this bad act to me in Nevada. If they... Shopify would have the option of deciding that because it viewed California laws as too draconian, it was not going to do business for anybody located in California. Shopify could make that decision, right? I don't think the... I don't think the Supreme Court's jurisprudence requires that sort of geo-blocking. The Supreme Court's jurisdiction requires that. I'm asking you, Shopify has the ability to say, we're not going to do business with anybody in California or anybody in Hawaii because their laws are not to our liking and we don't want to be hailed into court. Well, the problem even with that is Shopify is not doing business with consumers. Shopify is doing business with merchants. Those merchants are themselves forum agnostic. And so Shopify, it isn't a question of Shopify saying, I won't do business in California. It is the merchants then with whom the appellant actually has a relationship that would have to not do business in California. I think Judge Bennett is asking, I think if I understand it right, like a technical question. So you're saying we don't do that, but could you say no IP address coming from California will be processed by our company? I don't have the technological facility to answer that specific question. It is possible, I suppose, that different companies could block websites from California and they would, Shopify would have to tell all of its merchants that you may not have California consumers either. I think as a technological matter, that may be possible. I think the complexity also happens because people are on cell phones. They're moving around. You may have your New York phone and you're using, you happen to be using it in California. In fact, the class allegation in this case is not for citizens of California. It's for anyone who accessed a website while they were in California. Well, that's the point. I think that's why it matters that he's clarified that he thinks, he's alleging that at the time of a purchase is initiated, Shopify knows where that computer is. And that's a California computer in these hypotheticals. And I can see that point. The point I am making is knowledge that harm is going to be suffered in a jurisdiction has been found expressly to be insufficient under the Supreme Court. That's not all they're alleging. That's not all they're alleging. It goes beyond harm. I mean, again, I go back, what's your best case for the proposition that tortious conduct that occurs in a jurisdiction and produces injury in the jurisdiction is not sufficient for a specific person jurisdiction? Do we have any cases that says that? I would say that there's the Asahi case on a stream of commerce theory. He says that just because the harm, even if the harm happens in the jurisdiction. He added the tortious conduct. Do you have a case that says that tortious conduct can occur in a jurisdiction producing injury there to a resident there? And there's no specific person. I think the third circuit's decision in Hassan and the first circuit's decision in Rosenthal. Decision that says that? I think the Supreme Court has reserved that question in a number of decisions. Well, let's assume, I'm sorry, go ahead. Do you acknowledge that there's a brick and mortar store now in California for Shopify? Judge Rawlinson, there was, in the complaint, alleged in 2018 that Shopify had, it's paragraph 11, had a physical location, but it was targeted to merchants, not to consumers. But the fact that there is a physical location, how does that change your argument, if at all? Why wouldn't that establish jurisdiction? It doesn't change the argument because under the Supreme Court's personal jurisdiction jurisprudence, the acts, the contacts need to relate to the claim, or that is stated differently. But not, I thought those brick and mortar stores were selling this service that includes stitching together data and profiling the customers. That's not the allegation of the complaint. The allegation- I've read the complaint several times. Tell me what we're missing. The allegation of the complaint is Shopify opened a physical store located in Los Angeles that it uses to market services to California merchants. We're in the courtroom when I'm posing counsel. But that's- Just talked about business model number two. So business model number two is what they're saying here now. In the actual complaint, there was no allegation that we're actually selling these payment processing services that allow us to extract customer data at the physical location. I may beg to differ with you, but rather than eating up your time, it just seems to me that's an argument that they need to amend. Well, no, because there are also declarations in this case that directly refute their business model number two and say it does not exist. Okay, so tell me where in the record we should look for that. To the excerpts of record at 96 through 99, there's the declaration of Seth Brassic. In support of our motion, Shopify's motion to dismiss at record 137 to 140, the declaration of Aaron McIntominy. They are clear. We do not share processing customer information across merchants. They declarations are clear. Shopify acts at the direction of merchants. That's different, across merchants. I've read these declarations, but again, I don't want to take up a lot of your time. Are there other places in the record we should look? Those are the key declarations that refute the idea that Shopify is engaged in business model number two, which I understood to be we are taking information from consumers and using it to sell them to other merchants. That's how I understood their business model number two. But going back to the question... Can I just ask more specifically on the facts? I wanted you to finish answering my question. Yeah, going back to the question of the physical store, the plaintiff does not allege that anything that happened in that physical store is in any way connected to the complaint. Put aside a rising out of, which has been understood to be a causal connection, even related to has real meaning, as the Supreme Court explained in Ford. You cannot... It's broad though. It's broad, but in Ford, the Supreme Court said there was a strong relationship between the conduct in the state and the claim. And as this court in Yamashita explained, there was a strong relationship or a strong connection. Here, there has been no alleged connection between the existence of that store and anything that plaintiff, anything that caused plaintiff's claims. Plaintiff has not even alleged that the merchant with whom he transacted, IAB, MFG, had anything to do with this store, sought services from this store or otherwise. So Ford talks about creating like an ecosystem that will cause this type of injury to occur. You're fixing cars, you're selling this type of car. So bringing a car in, now you're in this ecosystem. Why isn't this paragraph 11 talking about creating an ecosystem where they're processing data for California merchants? They've got a brick and mortar store to get more California merchants to use their services. And then when they do the services, they have these allegations. Now you may deny the allegations and that's what the case would be if there is jurisdiction. But the core idea is this claim arises out of the ecosystem created by servicing merchants in California. Yeah, but Ford went, I think, on at some length. It wasn't just about Ford sells cars into this jurisdiction. It was about Ford is specifically marketing to the very class of consumers who were harmed. Ford is specifically servicing these models of cars. But they're marketing to sell a car. The car wasn't actually sold in that jurisdiction. It's creating the ecosystem where this car will be in California. So here they're creating an ecosystem where these services are going to be done in California. But in Ford, the ecosystem was created. A market was developed, serviced and cultivated for the very class of consumers at issue. There would be a difference here, Judge Friedland, if the question was, can a merchant sue California as a result, sue Shopify or a Shopify entity in California as a result of this brick and mortar location? I think that's a different question. Here, there is no ecosystem being created for the class of consumers that appellant seeks to represent. If Ford happened to be the, I mean, if Ford cars were injuring pedestrians and now the pedestrian is injured by the Ford car that's in the state because of all the ecosystem, don't you think the pedestrian could sue just as much as the car owner? I think in that case, actually, the pedestrian could sue the car driver, certainly. I'm having a little bit of a difficulty trying to see how the pedestrian could then go all the way back to sue. I don't know, the car explodes and kills the driver and the pedestrian. You don't think the pedestrian can sue? I think in Ford, under the facts of Ford, it's possible that the pedestrian could sue given Ford's extensive activities in cultivating a market. And so here, you have the service to the vendor in California and the customer of the vendor, and so the customer's like the pedestrian, no? No, but here, the merchant is the one that is electing to opt into certain services or not and make those services available to its consumers or not. The existence of a single physical store in California targeting an entirely different class of people, Shopify's only customers are merchants. Well, the Supreme Court hasn't really answered this question exactly. In the internet context, I agree. I was on the 3J and you won. Yes. Okay, but that was based on existing precedent. We're on bonk. We can overrule some of our precedent or we can decide what we think the Supreme Court would do. I think I see the Supreme Court is going to say that virtual presence is enough for personal jurisdiction under certain circumstances. Now, if you argue that Briskin is saying it just follows everywhere the plaintiff is, that gets in the way of some of their precedent. But you're saying they would have, it can't be right that Shopify, that there's no jurisdiction for Shopify invading people's privacy. I am arguing there is jurisdiction. And you're saying it's where? At the very least where there is general jurisdiction. So in the states in which Shopify is at home, which here there are Shopify entities, as we've explained, that are at home in New York, that are at home in Delaware. I think to get beyond that- Right, Ken, so, excuse me, but to be clear, what you're saying is there's no specific personal jurisdiction as regards your client. On the facts alleged, I would agree with you. On the facts alleged, as this court, and I think taking cues from the Supreme Court's decisions in Asahi and Jay McIntyre have held, you cannot simply have your website functions in our state and that's enough. There needs to be express aiming in a way that is related to the claims at issue. What's your best argument that Shopify's conduct does not relate to Briskin's suit? Because the conduct of which he alleges that is related is simply the functioning of the Shopify payment services. The brick and mortar store that has been alleged in this case as that something more does not bear a relationship, much less a strong relationship with the claims at issue in this case. Contracting with other merchants in California does not bear a relationship with the claims at issue in this case. What we essentially have- So you're saying that Shopify's relationship with the merchants is irrelevant? I'm saying Shopify's relationship with a merchant, which is the only one that's implicated in this case, is not the driver of the jurisdictional inquiry because as the Supreme Court said in Walden and in Bissell-Myers Squibb, it is what the defendant does to connect itself to the forum and the claim. It is not the defendant's relationship- So why isn't the data scraping enough? That's the something more that everyone's talking about. But that is the actual, according to them, that is the way the website functions. That is the way the interactivity functions. But why is that not enough for personal jurisdiction then? Because that is an act that does not reflect express aiming into the forum. But while the computer is in California. That's what he's saying. With geolocation, we know that computer is in California when the data scraping occurs. But in that scenario, we are allowing the plaintiff's connection to the forum to drive the inquiry. No, no. I don't think so. What he's alleging is defendants know it. They know where that thing is, right? Wherever the plaintiff is. And so they're limiting this class, I think, to computers in California. And defendants' purposeful availment, if you want to talk about it, actually think either the court or contract theory would probably get you there. Because of the geolocation function. And what I would suggest to you is that knowledge that harm is going to be experienced. Knowledge in Walden, as an example. Yes, I agree, Judge Collins, it's not on all fours because the act occurred there in Georgia. But the allegation and what this court initially found persuasive was, but you knew the loss was going to be experienced in Nevada. You knew the plaintiff would be missing its monies in its home state in Nevada. And the court said that is going to turn the jurisdictional inquiry into where plaintiff is. And where the harm follows the plaintiff. So in this case, I see no limiting line from what they are— But didn't Shopify purposefully direct its activity at California? It absolutely did not. Shopify directed its activity to merchants all around the country. Plaintiffs claim that— Are you relying on differential targeting? I'm sorry. Are you relying on the differential targeting rule? I'm not relying on AMA's differential targeting rule. I think differential targeting or differential excess, depending on the framing, either framing both AMA and in Doe. I think that is sufficient to establish something more. I would not say it is necessary to establish something more. As your Honor knows— But in response to the Chief Judge's question, that seemed to me what you were saying was differential targeting. Because why isn't this enough to send into California? And you said, well, we send in everywhere. Well, maybe this is like Keaton, that you sell publications in 50 states, you're subject in 50 states. I think Keaton says there was sort of a deliberate and active exploitation of the market. Here, we don't have a deliberate and active exploitation of the market. But I think that gets to the combination of Judge Christin and Judge Bennett's questions. If you know you have the ability to block California purchases, you're putting in the cookie when you know the person's in California. Once you continue to do it, isn't that deliberate? No, I would say— Well, the act itself may be deliberate, but it's targeting the person. It's not targeting the forum. And that is an important distinction. I don't disagree. If you know the person is in California, and then you are doing something to deliberately target that person, I agree that that is a deliberate act. And there hasn't been a dispute over the intentionality of the acts here. It is, but are you purposefully directing your activities at the forum as opposed to as a resident in that forum? But why is it any different at that point? I mean, it's an electronic transaction that you know is happening to a thing in California. Why is it any different than Herbal Brand sending the product then to California? You're doing the thing to California. Right. So in Herbal Brands, I do think there is a distinction between physical good and virtual goods. And I think that this Court's precedents have acknowledged that Herbal Brand itself says that there is a distinction, a meaningful distinction, between physical goods and virtual goods. But now we're on Bonk, so should there be? Yes. Even under Herbal Brands, I submit, we win because Herbal Brands did not say it is just the delivery of a good. It has to be the delivery of the good in the regular course of business. And you have to have control over the distribution. And all of those things were satisfied between these questions that were asked. But they are not satisfied on the facts of this case. The harm. Why not? Because the claim that they allege in this case, the claim occurs when the tracking software is input. That is the claim of the privacy violation. And at that moment, Shopify has not expressly aimed its conduct. It hasn't limited its conduct. It hasn't limited its conduct to California. But it knows that it's doing this to a computer in California. That's the allegation. I don't know if it's true. Right. It is not true. But even putting that aside for now, the harm, though, occurs at the time that the cookie is implanted. And at that point, there is no allegation that at the time the cookie goes in, we know that they're in California. What he just said. No, he's saying. He just said that the cookie is inserted at the time somebody initiates a sale, whether it's consummated or not. Right. And when I asked about the geolocation, when does that click in? When do you know whether? And he says the same time. I think the fair reading of the complaint is after the cookie's implanted. That's when you get the information. That's why I asked the question. Right. Because I think there's some wiggle room in the complaint as well. But that gets me back to it. So maybe they need to amend. But if the facts are in the hypothetical that we have been posing are true, I still have not heard an answer to the question that Judd Tweedland asked, that I've asked, that actually maybe the majority of the panel has asked at this point. Why isn't that enough? Because that may be express aiming at a resident of the forum, but it is not express aiming at the forum itself. And that is what is required. If there is no limiting line in what plaintiffs are proposing. Well, there is a limiting line in what plaintiffs are proposing. As I see it, if a company makes the choice that it is going to do this with regard to residents in Albuquerque or Sioux Falls, then it's subject to jurisdiction in Albuquerque and Sioux Falls because it can decide that it's not going to deal with anybody who's in New Mexico if it wants to. And having decided New Mexico is a good market, we want to go there, and if cookies are implanted in computers in New Mexico, so be it. There is a choice, as I see it, to not do business in particular jurisdictions or not do business involving consumers who live in particular jurisdictions or that's where their credit card says they live. Or their IP address says their computer physically is. I don't believe that that set of facts would apply in this case for the reasons I've explained, namely that we deal with merchants who themselves are foreign agnostic, but even if it did, there's no precedent that says that the way that a company avoids jurisdiction is by not interacting with consumers in those states at all, because that, frankly, would create all sorts of problems for California and other states. The question is not, have you not, have you chosen to block someone? The question is, have you expressly aimed your conduct at a state, not at a resident of the state, not just with knowledge that a resident of the state may suffer harm? And again, I would say that the other- Isn't it the choice of merchants that matters here? So, and it sounds like Shopify chooses to allow California merchants or merchants that sell in California. Shopify provides services to merchants wherever they may be and also choose not to target merchants that sell in California. I think that would, they, yes, I suppose that is true. Why isn't that the choice that they're making to go into California? Because that is a choice that is being made across the country. Yeah, just because they have, they choose to sell nationwide doesn't mean that they can't sell, the choice of selling California is not enough for personal jurisdiction there. Judge Bumate, I would submit that under that framing, if that is the driver of personal jurisdiction, jurisprudence, we are inviting a whole host of other problems where individual companies will have to opt out of doing business in a state because just the fact of doing business in the state would be enough. And Herbal Brands doesn't say that. And Asahi doesn't say that. In Asahi, the manufacturer knew that 20,000 or likely expected 20,000 tires would come into the jurisdiction. But there was no rule that said, well, if you go into the jurisdiction, if you choose to do business in the jurisdiction, that's enough. Herbal Brands didn't say that because Herbal Brands didn't have to say that. But we're in a different land now. This is the question is that now, this is the next step. But I don't know, I don't think Herbal Brands is helping you very much. I understand. I mean, the court is on bonks that the court can do as it wishes. If we wipe away all the non-constructive precedent, I mean, and the question is asked, does the original public meaning of the due process clause help you in any way? How should it inform our decision? I think the due process clause was originally understood to be more limited. I think it is hard to say that from that, any company that chooses to do business effectively, which is the rule I think that is being proposed, in any state in the country may become subject to jurisdiction in that country, in that state. I think Justice Kagan in Ford actually said, we are getting awfully close, if that is the rule, we're getting awfully close to general jurisdiction and taking out the real limits of specific jurisdiction. I think that is fundamentally the problem. Some of the academics that believe that that's what actually the original meaning of the Fifth Amendment is, right? Do you acknowledge that? I missed the first part. Sorry, some academics actually believe that that is true, that under the original and public meaning of the Fifth Amendment, there is essentially universal jurisdiction. I think that's right. But I would also submit that the Supreme Court has never accepted that. In fact, across the spectrum has rejected that idea that simply doing business in a state ought to be sufficient because you chose, you did not choose not to do business in that state. And I think if that were... The limitation on that is the arise out of, the injury has to arise out of or relate to that particular business. That's the limitation. Not that simply doing business is the limitation. It's you have to look at what the injury was and what it rose out of or related to. I agree, Judge Wardlaw, but if we were to say that the fact that you choose to do business in a state is sufficient to satisfy express aiming, that does grossly expand specific jurisdiction in a way that has never been found to be appropriate under either this court's panel precedent or the Supreme Court's precedent. And I think it would stand in direct contrast and create a split with two other circuits that have looked at this issue on very similar facts and ruled that... How do you distinguish the Calder v. Jones case then? I think the way that the Calder case came out, we actually support the test announced in Calder. We're saying that to satisfy express aiming as Calder held, you need, in the virtual context, to show something more than your website functions in the jurisdiction. And I think that that test, that something more test as applied to the internet has been workable across courts in this country. District courts throughout the Ninth Circuit have dealt with very similar fact patterns. Can I ask you one just factual question? I want to make sure I understand. On this, what we're calling the second theory, you've said that they don't sell the data. Is there... Does Shopify transmit data from the consumer after the transaction is completed? Pursuant to the directions of the merchant that with whom Shopify has a relationship, Shopify does transmit the data consistent with the merchant's directions. Oh, can I make... Is that a yes? Yes, Judge Collins. Shopify, consistent with the merchant's directions, will process the data as directed. Judge Wardlaw? Yes, counsel. Isn't it a fact that you act... that Shopify actually transmits the consumer's information among its merchants within... with which it contracts? For example, if I were to make... choose to make a purchase from a merchant in the Shopify network and give them my information and then I go to another merchant, and I don't know whether it's Shopify or not Shopify, but I go to do another transaction, all of a sudden a window for Shopify will appear completely different merchant, but it's a Shopify-connected merchant. Isn't that true? That is not accurate as a factual matter. And that's the declaration I was pointing, Judge Christin, to earlier, the declaration of Seth Brassic, which is in the excerpts of record explicitly says... Perhaps that's the reason why there should have been more jurisdictional discovery, because that's honestly been my personal experience with Shopify. Yeah, I can't speak to that, Judge Wardlaw. I know, I know. I'm just saying, I've seen this happen with Shopify. I know, I'm not saying anything negative about Shopify. It's actually, I find it convenient, but it's a completely different merchants, but just in the Shopify sort of network of agreements. Right, and I don't know, there may be specific things on your browser, specific other autofills. I'm not quite sure, but... Inserted by Shopify. But the declaration, at least in this case, which is not, for which there's no response, has been that Shopify does not share transaction, customer transaction data between one merchant and the other. And I would just, I know I'm out of time. You are out of time, thank you. I would just close with pointing out that what the panel opinion held here and the articulation of the test here, which is the Calder effects test, where express aiming requires something more, has been a workable solution. It is the solution in the first and the third circuits. It is a solution that the district courts throughout this circuit have applied on very similar facts. And we would submit that it should remain the law in this circuit. Thank you. Thank you. Thank you, your honors. I'll be brief on rebuttal. Just want to emphasize that my friend on the other side essentially said that there is no specific jurisdiction anywhere for the claims alleged in this case. I'm not aware of any case in which a tort is alleged and there is no specific jurisdiction in any forum to adjudicate that tort. What we have here is Shopify installed software on a California computer, pulled data off the California device, compiled a profile of a California consumer allegedly in violation of California law. There is no other forum other than California that has an interest in this litigation. And so if specific jurisdiction is not proper in California, it's not proper anywhere. And an injured California consumer or the California attorney general seeking to enforce California's data privacy laws would then have to turn to a foreign court, perhaps in Canada, perhaps in Belarus, if that's where Shopify were incorporated, anywhere else, and trust those foreign courts to adjudicate California's laws. Nothing in Supreme Court precedent requires that odd result. So we asked this court to faithfully apply the principles in international shoe and hold that jurisdiction is appropriate here. Thank you very much, Mr. Sansone, Mr. Cava. I appreciate the argument presentations presented here today. The case of Brandon Verskin versus Shopify incorporated is now submitted. We are adjourned. Thank you. Thank you.
judges: MURGUIA, WARDLAW, RAWLINSON, CALLAHAN, CHRISTEN, FRIEDLAND, BENNETT, COLLINS, BUMATAY, THOMAS, DESAI